Mr. Justice Cox
delivered the opinion of the court.
The preliminary question is made as to the authority of this court to make reference to the auditor, on the ground that the legislation of Maryland (which is yet a part of the laws of this District) contemplates that the statement of an executor’s account shall be made by the register of wills only.
This court has the right to acquire information by any of the instrumentalities known to our practice, either by depositions, viva voce examination in open court, trial by jury, or reference to the auditor. Iu fact, this reference to the auditor amounts to but little more than issuing a commission to take testimony. After all, the register states the account under directions of the court, which acts upon information collected by the auditor, the register of wills, or in any of the modes I have mentioned. I do not, therefore, attach any weight to the preliminary objection, and will proceed to the consideration of the merits of the case.
The principal objection to the auditor’s report is to that part which charges the executor with moneys paid to him on account of the note of F. C. Cate, in favor of the decedent, John Wagner, which fell due in May, 1876, one payment upon which was made during the lifetime of the testator, and the others since his death. It is said that the title to the note had passed out of the testator in his lifetime, and *396 constituted no part of his estate, it in fact having been passed over to his son, William Wagner, or to Richard Roth-well, who was afterwards executor.
It is a general rule, that the possession of negotiable paper payable to bearer, or negotiable paper payable to order and endorsed in blank, is prima facie evidence of title. On the other hand, the possession of a note payable to order, but not endoi’sed, is no evidence whatever of title, but is rather a suspicious cii’cumstance, which needs full explanation from the holder.
In this case the note was made payable to the order of John Wagner, and was not endorsed by him. It is px’oved and admitted that the name of John Wagner, endorsed upon the note, was written by his son. The words “ his mai’k,” and “X,” do not indicate that the mark is the handwriting of the deceased, as it is not attested by witnesses in the usual form.
The testimony fails entirely to sustain the theory that the decedent put his name to the paper. Rothwell, who was asked to look at the endorsement and the X, and the words “his mark,” and state in whose handwxúting it is, answered “ that is my handwriting.”
So that these endorsements ai’e not in the handwriting of the testator, but in that of an entix-e stranger to the paper. It has, therefore, no more force in law than if the note were entirely blank on the back. The possession of such a note is, of itself, no evidence whatever of title. It is, therefore, incumbent upon the parties who claim title of the testator, to show that title by other evidence than mere possession.
Testimony was offered tending to show that this note was given by the testator to his son William. William himself says that- his father gave him the note and authorized him to write his name on the back of it. Richard Rothwell says that he understood the old man to say that he had given the note' to William. There is no doubt that he did deliver the note to William for some pux’pose, but whether for the purpose of passing title is another thing. After it was in the possession of William, and the note passed into the hands *397 of Rothwell, we find that the testator is still exercising some control over the dispostion of the note ; that Rothwell is receiving directions from him, and recognizing his authority to dispose of it. He acts upon these directions, and undertakes to collect the note for the purpose of buying a piece of property with the proceeds, and reports progress to the testator.. In the first place, the testator and Mr. Rothwell went together to see Col. Tait, who was the agent for the property in question here, and endeavored to make use of this note in the purchase of it. That failed.
We find the next fact to be, according to the testimony of Richard Rothwell, that the testator told him (Rothwell) to negotiate for the property, and buy as soon as possible ; and that William Rothwell testified that the testator told him that he wanted the note discounted if he did not lose too much by it. In pursuance of this authority from the testator, Richard Rothwell proceeds to collect the amount due in instalments, and reports his action on one occasion to the testator, and afterwards applied the proceeds of the note to the purchase of the property. These facts are entirely inconsistent with the theory of William Wagnei’’s absolute ownex’ship of the note.
The px'oof is clear that the note was given for a purpose which is inconsistent with William Wagner’s ownership of the note ; and if that object was cax’ried out, the note would pass beyond the contx-ol of all the parties to the controversy, as well as that of the testator. Whatever might have been the testator’s intention with regard to the property acquii'ed by the use of the note, the note itself was clearly not intended to be the absolute property of William. I have no doubt that in some way or other the purchase of this px-operty was designed for the benefit of William, but the note itself, was retained as the property of the testator, and was under his control and disposition up to the time of his death.
Then, accox’ding to my best understanding of the case, Richard Rothwell held this note in the chax’acter of an agent or broker of John Wagner, for the purpose of raising money *398 upon it,'in order to supply the proceeds to make the purchase. That being so, the question naturally suggests itself ás to the effect the death of John Wagner had upon the relations of these parties and the disposition of the note. This was a mere naked authority, as agent, in Richard Rothwell to purchase this property, and in doing so to use the note.
It is important that we should enquire whether that purchase was made in the lifetime of the testator or afterwards. It is very clear to my apprehension that the purchase was not effected till afterwards. It is true that Richard Rothwell says that after getting the endorsement upon the note he went and closed the bargain with Col. Tait. Tait says, on the other hand, that he was notified, after the first interview between him and Richard Rothwell, that they would take the property only a day or two before the property was actually bought. Again, he says, in somewhat ambiguous language, that they did not offer to close the bargain until very near the middle of August, nearly a month after the testator’s death. Between these two statements, one thing is pretty clear, i. e., that this was to be a cash transaction.
Whenever Richard Rothwell notified Col. Tait that they would take the property, the bargain was not thereby closed, because Mrs. Bevlin did not want to part with the title on any other terms than cash; and the transaction was finally closed by the payment of cash, except an inconsiderable balance. So that it seems to me that there was no consummation of this purchase until nearly a month after the testator’s death.
Therefore, I say, that Richard Rothwell, having the authority to buy this property and apply the proceeds of this note to that object, it seems to me that the death of the testator works a revocation of that authority at law. 'As soon as he died, the authority of Richard Rothwell to make this purchase was at an end, and the note remained in his hands as the property of the testator, no matter how acquired, whether directly from the testator or from William Wagner. That is the view I should take of the matter, *399 based upon tbe idea that the testator’s intention was to vest the absolute title to this property, when purchased, in his son William. If, however, that was not his intention, then there is not the shadow of a reason for the theory that the title to the note passed from the testator in his lifetime, because the note was only passed for the purchase of this particular property. If he intended to take this property to himself, he necessarily intended to retain the title to the note.
Upon the question whether the testator intended to give the property to his son William absolutely, and in addition to his heritable portion of the estate, it seems to me there is a lack of proof. If the testator had paid for the pi’operty, and then died suddenly without a deed, could any chancellor, upon any evidence before me, decree an absolute conveyance of the title to William? It seems not to me, and, if not, there is a failure to prove that the testator intended to have it conveyed to William ; and if that was not his intention, it would be demonstrated that the note was never intended to pass absolutely out of his control.
There are other important considerations which cannot be without considerable weight. In the first place, there is grave doubt whether the testimony of the executor is admissible at all in his own behalf. If its exclusion is not within the letter of the law, it is within the spirit. Because here is a man testifying about transactions between himself and a dead man, seeking to exonerate himself from liability to the representatives of that dead man, who cannot be heard in( his own behalf. If his testimony should be excluded, it would knock away the main prop of the theory which would give the absolute ownership of this note to William Wagner, or the executor, representing William.
> Besides that, the conduct of these two parties had been irregular in the extreme from the beginning, and their testimony is very unreliable. In the first place, William Wagner endorses this note wholly irregularly, not by procuration, not by his own name as agent, but he endorses the name of his father, just in such wise as a man would do if he intended *400 to pass it off' on the payee as a genuine endorsement. He is wholly wanting in frankness in his testimony, refusing to answer, saying he did not know, and professing not to recollect things that occurred shortly before. He is also contradicted on various important matters, by both the executor himself and every other witness, testifying in one case that he bought the property and paid for it himself, but could not tell whether he paid cash or not, while the executor swears that he bought it.
And the executor’s refusal to produce the original note at the hearing, according to stipulation, as I understand it, is calculated to excite suspicion and justify the presumption that if the note was produced it would operate adversely to him. His testimony is also unsatisfactory, and I should feel bound to receive his statements in the main with many grains of allowance, and attach very little weight to them.
However, without deciding the question of law as to the admissibility of the executor’s testimony, or feeling bound entirely to reject his statements as to the purchase, &c., I am of the opinion, on the whole, that the title to the note did not pass from the testator, and that the executor is properly chargeable with the proceeds of the note.
• Therefore the exception is overruled, and the register of wills will be directed to state an account according to the auditor’s report, without prejudice to the rights of the executor to show that any payments which are charged to him were made in the testator’s lifetime, as it has been intimated that there is proof of such payments having been made.